UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-80344-CIV-RYSKAMP/VITUNAC

BRIAN C. DEWEY

      Plaintiff,

vs.

GRANT JOHNSON;
BENEVOLENT CAPITAL
PARTNERS; and
BURNLOUNGE, INC.,

      Defendants.
_____/

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

      In accordance with Rule 7.1C of the Local Rules of the United States District Court for the Southern District of Florida, Plaintiff Brian C. Dewey hereby files his Memorandum of Law in opposition to the Motion To Dismiss filed on April 30, 2008 by Defendants Grant Johnson ("Johnson"), Benevolent Capital Partners ("Benevolent Capital") and BurnLounge, Inc. ("BurnLounge").

### INTRODUCTION

      Defendants begin their Motion To Dismiss with a purported overview or summary of this legal action and an explanation of how this action, which was commenced in state court in February 2008, came to be removed to federal court by Defendants on or about April 4, 2008. Specifically, Defendants explain that they "removed the Complaint to this Court based on the federal question presented by Plaintiff's securities fraud claim under the Securities Exchange Act

1

of 1934". As an initial matter, before addressing Defendants' arguments that form the basis for their Motion To Dismiss, it is important to note that on May 15, 2008, Plaintiff filed his first Amended Complaint with this Court, voluntarily withdrawing or dismissing his claim under the Securities Exchange Act of 1934 – admittedly the only basis for removal. The same day, on May 15, 2008, Plaintiff also filed a Motion To Remand this case back to state court pursuant to 28 U.S.C. § 1447(c) and 28 U.S.C. §1367(c) on the ground that there is no longer any justification for exercising federal subject matter jurisdiction or supplemental jurisdiction over this case.

While Defendants had Motions to Dismiss, Stay and/or Transfer pending at the time of the filing of Plaintiff's Motion To Remand, this Court should first resolve the jurisdictional issues presented in Plaintiff's Motion To Remand before considering any other matters such as the arguments set forth in Defendants' Motions to Dismiss, Stay and/or Transfer. *See University of S. Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("a federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court."); *Smith v. Mail Boxes Etc.,* 191 F. Supp.2d 1155 (E.D. Cal. 2002) (jurisdictional issues should be resolved before court determines motion to stay); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 54 F. Supp.2d 1042, 1047 (D.Kan. 1999) (jurisdictional issue determined on motion to remand before court considered staying the action); *Codapro Corp. v. Wilson*, 997 F. Supp. 322, 323 (E.D.N.Y. 1998) (recognizing that motion to remand should be decided first prior to considering issues raised in pending motion to dismiss); *CC Indus., Inc. v. Ing/Reliastar Life Ins. Co.*, 266 F. Supp. 2d 813 (N.D. Ill. 2003) (deciding and granting motion to remand first and then striking as moot motion to dismiss); *Stafford EMS, Inc. v. J.B. Hunt Transp., Inc.*, 270 F. Supp. 2d 773 (S.D.W.V. 2003) ("Where, as here, a motion to

remand and Rule 12(b)(6) motions to dismiss are both made, it is ordinarily improper to resolve the Rule 12(b)(6) motions before deciding the motion to remand."). Plaintiff hereby respectfully requests that this Court address and decide Plaintiff's Motion To Remand prior to considering Defendants' various pending Motions.

Not only has Plaintiff's first Amended Complaint eliminated the basis for the exercise of federal subject-matter jurisdiction, but it has also mooted the bulk of Defendants' arguments set forth in their Motion To Dismiss. Indeed, in Paragraph 2 on Page 2 of Defendants' Motion To Dismiss, Defendants summarize the three (3) bases for their Motion as follows:

1. insufficiency of service of process with respect to Defendants Johnson and Benevolent Capital, but <u>not</u> Defendant BurnLounge;
2. failure to comply with heightened pleading requirements under applicable federal law; and
3. pre-emption of Plaintiff's Florida Blue Sky claim by federal law.

Plaintiff submits that issues 2 and 3 are moot as a consequence of the filing of his first Amended Complaint. Plaintiff will address below each of Defendants' arguments in more detail in the order in which they are raised in Defendants' Motion.

## **ARGUMENT AND AUTHORITIES**

### **I.     There has been effective service of process.**

Defendants Johnson and Benevolent Capital attempt to argue that Plaintiff failed to effect sufficient service of process despite the fact that:

- Plaintiff hired a private process server on or around February 19, 2008, specifically Choice Process, to serve Defendants Johnson and Benevolent Capital;

3

- Choice Process, in turn, hired DDS Legal Support Systems in California to effect service;

- On March 5, 2008, DDL Legal Support Systems traveled to 40 26th Street, Venice, California 90291 where Defendant Johnson admittedly resides[1] and where Defendant Benevolent Capital maintains an office according to its website.  See **EXHIBIT 1;**

- At the time that DDL Legal Support Systems arrived at 40 26th Street, Venice, California, Defendant Johnson was apparently not there; however, according to the Verified Returns of Service attached hereto at **EXHIBIT 2** and filed with the Circuit Court in and for Palm Beach County, Florida, the Summons and Complaint for both Defendant Johnson and Defendant Benevolent Capital were left with an individual by the name of Malia Hilliard, who identified herself to the process server as "co-occupant of Grant Johnson" and who acknowledged that she was eighteen (18) years of age or older;[2]

- Approximately 1 ½ weeks later, on or about March 17, 2008, Plaintiff's counsel Rebecca Davis received a telephone call from a California attorney by the name of Derek Lemkin, who claimed to represent Defendants Johnson and

---

[1] In Paragraph 2 on Page 3 of the Motion To Dismiss, it is acknowledged that the location where Plaintiff attempted service was "a residence of Defendant Johnson."

[2] It is also important to note that in addition to serving Defendant Benevolent Capital at its office in California (according to its website), Plaintiff also attempted to serve Defendant Benevolent Capital Partner at its New York office address identified on its website; however, the process server was advised that only one individual actually works out of the New York office and he is rarely at the office.

      Benevolent Capital and who requested that Benevolent Capital be voluntarily dismissed from this action – a request that was denied;

- On March 21, 2008, Plaintiff's counsel Rebecca Davis received a call from Florida attorney David Friedman, who requested an extension on behalf of all three (3) defendants to respond to Plaintiff's complaint. During telephone communications, Attorney Friedman indicated that if an extension was granted, Defendants would waive any defense in relation to the sufficiency of service of process. A one (1) week extension was granted;

- On or around April 1, 2008, Defendants' current attorneys were retained to represent Defendants in relation to this action. Defendants' current attorneys requested an extension until April 21, 2008 to respond to Plaintiff's Complaint. Nothing was mentioned at that time by Defendants' current attorneys that there was any issue concerning service of process, and Plaintiff granted the requested extension.

- On or around April 4, 2008, Defendants removed this action from state court to this Court, and, after having moved for and having been granted additional extensions of time, filed on April 30, 2008, a Motion To Dismiss, which included an argument on behalf of Defendants Johnson and Benevolent Capital that there was somehow insufficient service of process.

    The principal purpose behind service of process is to provide a named defendant with notice of a pending action in order to allow the defendant a full and fair opportunity to respond to it. *See Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273, 1277 (S.D. Fla. 1999) ("The principle purpose of the service of process rule is to give the defendant notice that an

5

action has been initiated."); *Shurman v. Atl. Mortg. & Inv. Corp.*, 795 So. 2d 952, 953-54 (Fla. 2001) **("**It is well settled that the fundamental purpose of service is 'to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff and, therefore, to vest jurisdiction in the court entertaining the controversy.'  In other words, the purpose of this jurisdictional scheme is to give the person affected notice of the proceedings and an opportunity to defend his rights.") (quoting *State ex rel. Merritt v. Heffernan*, 195 So. 145, 147 (Fla. 1940)); C*lark v. Clark*, 158 Fla. 731, 30 So. 2d 170, 171 (Fla. 1947) ("The purpose of constructive or substituted service is to bring knowledge of the pending litigation to the defendant in order that he may appear and guard his interests.").   Here the purpose of the service of process rule was clearly accomplished.  The summons and a copy of the filed complaint for both Defendant Johnson and Defendant Benevolent Capital was admittedly delivered to Defendant Johnson's residence, which also serves as an office for Defendant Benevolent Capital, and within 12 days an attorney purporting to represent both Defendant Benevolent Capital and Defendant Johnson contacted Plaintiff's attorney to discuss the action.  Defendants Johnson and Benevolent Capital had sufficient notice to allow them to talk to and possibly retain three different sets of attorneys, remove the action from state to federal court, request and obtain multiple different extensions to respond and to ultimately respond nearly two (2) months later by filing Motions to Dismiss, Stay and Transfer.  Quite clearly, Defendants had adequate notice of Plaintiff's Complaint and have had more than an adequate opportunity to respond, which serves to carry out the purpose behind the service of process rule.

    Indeed, this Court in *Frank Keevan & Son, Inc. v. Callier Steel Pipe & Tube, Inc.*, 107 F.R.D. 665 (S.D. Fla. 1985) acknowledged not only that service of process rules are to be liberally construed, but also that both Florida and federal courts have held that actual notice of a

complaint, coupled with good faith attempted service, may be legally sufficient.  Specifically, this Court stated in *Frank Keevan & Son, Inc.,* 107 F.R.D. at 671 that:

> To determine if service of process has been effective, courts necessarily examine the facts of each particular case. If the court finds that the defendant received notice of the complaint and the plaintiff made a good faith effort to serve the defendant pursuant to the Rule, then the court will most likely find that service of process has been effective.

Here, it is clear that a good faith attempt at service was made, Defendants received notice of the Complaint and Defendants have had a full and fair opportunity to respond to the Complaint.  Therefore, Defendants argument that this case should be dismissed against Johnson and Benevolent Capital on the basis of insufficient service should be rejected and denied.

**II.     Plaintiff's claims are stated with sufficient particularity.**

   A.     The heightened pleading requirements of the Private Securities Litigation Reform Act are only applicable to claims under the Securities Exchange Act of 1934.

Much of Defendants' argument regarding satisfying pleading requirements focuses on Plaintiff's former claim in his original Complaint under the Securities Exchange Act of 1934, which has now been voluntarily dismissed or withdrawn pursuant to the Amended Complaint. For example, Defendants argue in their Motion To Dismiss that Plaintiff failed to satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"); however, the PSLRA was only applicable to Plaintiff's former 1934 Act claim, and the issue is now moot.  See *Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674, 683 (9th Cir. 2005) ("Claims brought under Sections 11 and 12 of the 1933 Act are *not* subject to the heightened pleading requirements of the PSLRA.").

   B.     There is no need to allege or prove scienter with respect to a claim under Section 12 of the Securities Act of 1933 or under the Florida Securities and Investors Protection Act.

Defendants argue that "[t]he Complaint fails to allege a strong inference of scienter as

7

required by the PSLRA".  Again, however, the PSRLA was only applicable to Plaintiff's former 1934 Act claim, which has been withdrawn or dismissed.  Moreover, there is no requirement that Plaintiff prove, much less allege, scienter on the part of Defendants in order to successfully recover on his claim under Section 12 of the Securities Act of 1933.  *See Schaffer v. Evolving Systems, Inc.*, 29 F. Supp. 2d 1213 (D. Colo. 1998) (In a claim under Section 12(a)(2) of the Securities Act of 1933, "[t]he purchaser need only allege a material misstatement or omission in a prospectus or oral communication of which he had no actual knowledge. The **purchaser need not prove scienter**, fraud, or negligence on the part of the seller, nor need he establish that he relied upon the misrepresentation or omission or that his or her loss was a direct or proximate result of the misrepresentation or omission.") (emphasis added); *Wuliger v. Mann*, 2005 U.S. Dist. LEXIS 13021, at *14-16 (N.D. Ohio July 1, 2005) (attached hereto at **EXHIBIT 3**) (recognizing that there is no requirement to allege or establish scienter in order to prevail on a claim under either Section 12(a)(1) or 12(a)(2) of the Securities Act of 1933).

The same is true with respect to a claim under the Florida Securities and Investors Protection Act.  An investor need not allege or prove scienter, but merely has to establish negligence in order to prevail on 517 claim under Florida Blue Sky law.  *See Grippo v. Perazzo*, 357 F.3d 1218, 1222 (11th Cir. 2004) (acknowledging that scienter is not a required element of a cause of action under the Florida Securities and Investors Protection Act, but rather mere negligence will suffice).  Even assuming that there is a requirement of scienter with respect to Plaintiff's current claims (which there is not), the Amended Complaint sufficiently alleges scienter to overcome Defendants' Motion To Dismiss.

   C. <u>The Amended Complaint satisfies the pleading requirements of Rule 9(b)</u>.

While Plaintiff submits that his original Complaint set forth allegations with sufficient

particularity, there is no question that his Amended Complaint provides sufficient detail to comply with the requirements of Rule 9(b). Indeed, Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

As acknowledged by Defendants in their Motion To Dismiss, the purpose behind the particularity requirement set forth in Rule 9(b) is to place Defendants on notice of the specific wrongdoing for which Plaintiff seeks to hold them liable. Even a cursory review of the Amended Complaint reveals that the requirement and purpose of Rule 9(b) has been satisfied. Indeed, throughout Plaintiff's 16 page Amended Complaint, Plaintiff details the "who, what, why, where and when" of Defendants' wrongdoing. One need only look to Paragraph 12 of the Amended Complaint alone to see that Plaintiff spends seven (7) pages itemizing when and how the misrepresentations and omissions occurred, what specifically the misrepresentations and omissions were, how the misrepresentations and omissions misled Plaintiff and how Defendants were benefited as a result thereof.

Any uncertainties that may have existed as a result of Plaintiff's allegations in his original Complaint have unquestionably been clarified in Plaintiff's Amended Complaint. For example, Defendants complain on Page 12 of their Motion To Dismiss that "Plaintiff fails to set forth any specific statements by BurnLounge." This has been clarified in paragraph 12(B) on page 6 of Plaintiff's Amended Complaint wherein it is stated that:

> Defendant BurnLounge made a similar representation to Plaintiff Dewey in a "Form of Subscription Agreement", which provided in Paragraph 1(c) that "The Series C Preferred Stock will be offered and sold to the Purchaser without such offer and sale being registered under the Securities Act, in reliance on the exemption provided in Section 4(2) of the Securities Act and Regulation D promulgated thereunder."

The Amended Complaint in Paragraph 12(D) on page 8 sets forth with particularity yet another specific misrepresentation made by Defendant BurnLounge in a specific document, providing as follows:

> Defendant BurnLounge, in its "Form of Subscription Agreement" affirmatively and falsely represented that it was not "in breach or violation of any statute, judgment, decree, order, rule or regulation applicable to it or any of its properties or assets, which breach or violation would, individually or in the aggregate have a Material Adverse Effect."

Defendants also argue as another example in their Motion To Dismiss that Plaintiff's Complaint lacked sufficient detail to allow Defendant Benevolent Capital "to discern whether the alleged misrepresentation was made by Johnson or another employee." Yet again, if this was not clear before (and Plaintiff submits that it was), the Amended Complaint makes clear that the misrepresentations at issue by Defendant Benevolent Capital were made by Defendant Johnson, who Plaintiff believed and was, in fact, acting as an agent, representative and/or employee of Defendant Benevolent Capital.

In short, Defendants have been provided with full and fair notice of the wrongdoing that has been committed against Plaintiff. Indeed, Plaintiff has gone above and beyond the call of duty in supplying detailed facts underlying his claim and submits that he has pleaded his claims with greater particularity than is found is the vast majority of other securities actions. The purpose of Rule 9(b) has been satisfied, and Defendants' request for dismissal based on a purported failure to satisfy Rule 9(b) should be denied, particularly when a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directive of Rule 9(b) with the broader policy of notice pleading set forth in Rule 8. *See United Liberty Life Ins. Co. v. Pinnacle W. Capital Corp.,* 149 F.R.D. 558, 561 (S.D.

Ohio 1993) ("Rule 9(b) requires that fraud be plead 'with particularity.' As the plaintiff argues, this Rule must be read in conjunction with Rule 8. Rule 8 allows notice pleading which requires that a pleading merely contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' When harmonized with Rule 8, Rule 9(b) requires that a pleading provide the defendant with notice of the substance of the claim sufficient to alert him to the nature of the claim. The Sixth Circuit has stated that Rule 9(b) allows courts an opportunity to terminate groundless litigation. However, the Sixth Circuit has noted its reluctance to dismiss a claim for failing to plead with particularity as long as the pleading shows that there is a reasonable basis for the claim pled."). Indeed, federal district courts in Florida, including this Court, have denied motions to dismiss for failure to comply with Rule 9(b) on a number of occasions by following the cautionary directive of the Eleventh Circuit that Rule 9(b) must be harmonized with the liberal pleading requirements of Rule 8.[3]

### III. <u>Plaintiff is entitled to relief under the Florida Securities and Investors Protection Act</u>

In attempt to avoid the imposition of liability under the Florida Securities and Investors Protection Act ("FSIPA"), which is evaluated under a negligence standard and statutorily provides the prevailing party with the right to recover his attorney's fees, Defendants try to argue that Plaintiff's Claim is somehow pre-empted by federal law pursuant to the National Securities

---

3   *See Sides v. Simmons*, 2007 U.S. Dist. LEXIS 70527  (S.D. Fla. Sept. 24, 2007) (attached at EXHIBIT 4); *Al-Rayes v. Willingham*, 2007 U.S. Dist. LEXIS 17858  (M.D. Fla. March 14, 2007) (attached at EXHIBIT 5); *Reily v. Kapila*, 2004 U.S. Dist. LEXIS 30881  (S.D. Fla. March 29, 2004) (attached at EXHIBIT 6); *In re Eagle Building Techs, Inc.*, 221 F.R.D. 582 (S.D. Fla. 2004) (denying motion to dismiss securities fraud action and acknowledging that "Rule 9(b) cannot be read to abrogate Rule 8, under which it is appropriate to dismiss a complaint only 'when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'").

11

Market Improvement Act of 1996 ("NSMIA").[4] Defendants' argument, however, fails for two reasons:

      A.      <u>The National Securities Market Improvement Act of 1996 is inapplicable.</u>

The NSMIA functions to preempt state law only with respect to "covered securities", which are defined as those securities that qualify for an exemption from registration pursuant to § 4(2) of the Securities Act of 1933. Defendants rely heavily on this Court's opinion in *Temple v. Gorman*, 201 F. Supp. 2d 1238 (S.D. Fla. 2002) for the proposition that they are able to enjoy the benefit of the NSMIA's preemption provision if the securities offering at issue purported to be exempt from registration regardless of whether it, in fact, qualified for exemption. However, at the time that this Court rendered its opinion in *Temple*, district courts were split on the issue of whether securities offerings must actually qualify for a federal securities registration exemption in order to be entitled to NSMIA preemption. Moreover, at the time of the *Temple* decision, no federal appellate court had addressed the issue. However, since this Court rendered its decision in *Temple*, the United States Court of Appeals for the Sixth Circuit, in *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901 (6th Cir. 2007), considered the issue and the split of authority among the district courts and held that offerings must actually qualify for an exemption in order to reap the benefit of preemption under NSMIA. Specifically, the Sixth Circuit reversed a lower district court's opinion that actual exemption qualification was unnecessary and held as follows:

> The district court held that the simple fact that the 1999 filing had been entered under the rubric of a federal exemption entitled it to federal preemption pursuant to NSMIA. District courts and state courts have split on the question of whether filings must actually

---

4    Defendants also attempt to argue that Plaintiff's FSIPA claim should be dismissed because "Plaintiff fails to identify which section of FSIPA Defendants have violated"; however, this argument is now moot inasmuch as Plaintiff specifically identified in Count II on pages 12 and 13 of his Amended Complaint the specific sections that Defendants violated and on which his FSIPA is premised.

> qualify for a federal securities registration exemption in order to be entitled to NSMIA preemption. To the best of our knowledge, no federal appeals court has yet ruled on this question. We now agree with those court that have held that offerings must actually qualify for a valid federal securities registration exemption in order to enjoy NSMIA preemption.

*Id.* at 909-910.

The Sixth Circuit also went on to specifically discuss the *Temple* opinion, which it criticized and specifically "reject[ed]":

> "The *Temple* court read language into the statute that does not appear there. A security is covered if it is exempt from registration . . . . Nowhere does the statute indicate that a security may satisfy the definition if it is sold pursuant to a putative exemption. If Congress had intended that an offeror's representation of exemption should suffice it could have said so, but did not. Such an intent seems unlikely, in any event; that a defendant could avoid liability under state law simply by declaiming its alleged compliance with Regulation D is an unsavory proposition and would eviscerate the statute. Nor is it necessary to look to the legislative history; the statute is unambiguous."

*Id.* at 911 (quoting *Hamby v. Clearwater Consulting Concepts, LLLP,* 428 F. Supp. 2d 915 (E.D. Ark. 2006)).

Not only should this Court, in light of the rendering of the *Brown* federal appellate opinion require that the securities offering at issue actually qualify for a § 4(2) exemption, but this Court should also place the burden on Defendants, who seek the benefit of preemption, to prove the § 4(2) exemption qualification. *See Grubka v. WebAccess Int'l, Inc.*, 445 F. Supp. 2d 1259, 1260 (D. Colo. 2006) ("a defendant must prove preemption by proving exemption"). Plaintiff submits that Defendants cannot meet such a burden of proof.

    B.    <u>The National Securities Market Improvement Act of 1996, even if applicable, preempts only state claims concerning registration, and does not provide a blanket preemption.</u>

Even assuming that the NSMIA applies, which we dispute as discussed in Part III(A) above, the NSMIA's preemption provision is admittedly limited in scope and serves to preempt

13

claims under state securities laws only with respect to registration.  What Defendants ignore is that Plaintiff's claim under the Florida Securities and Investors Protection Act ("FSIPA") is based on misrepresentations and omissions concerning not just the offering's exemption from registration, but is also based on misrepresentations and omissions by Defendants in the course of offering and selling BurnLounge stock to Plaintiff that concern a host of other issues separate and apart from registration.  For example,  Plaintiff's claim under FSIPA is grounded on the fact that:

- Defendant Johnson acting as an agent, representative and/or employee of Benevolent Capital, falsely represented to Plaintiff Dewey that one of the principals and founders of BurnLounge was Christopher Sabec;

- Defendant Johnson, acting as an agent, representative and/or  employee of Defendant Benevolent Capital, and Defendant BurnLounge failed to disclose to Plaintiff Dewey that the profitability of BurnLounge Inc.'s business was based more on the sale of on-line music stores rather than on the retail sale of digital downloads themselves;

- Defendant Johnson, acting as an agent, representative and/or employee of Defendant Benevolent Capital, and Defendant BurnLounge failed to disclose to Plaintiff Dewey that BurnLounge was operating what amounted to an illegal pyramid scheme and utilizing deceptive earnings claims to promote the sale of on-line stores;

- Defendant Johnson, acting as an agent, representative and/or  employee of Benevolent Capital, falsely represented to Plaintiff Dewey that BurnLounge, Inc. intended to expand into the Brazilian market; and

- Defendant Johnson, acting as an agent, representative and/or employee of Defendant Benevolent Capital, also falsely represented to Plaintiff Dewey that if he invested in the

      Series C offering, an opportunity would be available to him to sell his shares in mid 2007.

None of Plaintiff's claims under Fla. Stat. § 517.211 for Defendants' violation of Fla. Stat. § 517.301(1)(a) as a result of the above-described material misrepresentations and omissions is preempted by NSMIA.

## **CONCLUSION**

      For all of the reasons set forth above, Plaintiff respectfully requests that Defendants' Motion To Dismiss be denied.

Date: May 19, 2008

                                RESPECTFULLY SUBMITTED,

                                s/ Elizabeth Beck
                                Elizabeth Beck, Esq.
                                Fla Bar ID # 20697
                                elizabeth@beckandlee.com
                                Beck & Lee Business Trial Lawyers
                                28 W. Flagler Street, Suite 555
                                Miami, Florida, 33130
                                (305) 789-0072 (Office)
                                (786) 664-3334 (Fax)
                                Attorneys for Plaintiff

                                Rebecca Davis, Esq.
                                Fla Bar ID # 492671
                                griffey@investmentlossattorney.com
                                DAVIS GRIFFEY
                                1245 Roycroft Avenue
                                Celebration, Florida 34747
                                800-897-8694 (Office)
                                901-570-0639 (Cell)

                                **Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion To Dismiss was electronically filed with the Clerk of the Court using CM/ECF on May 19, 2008.  I also certify that this document is being served this day on all counsel of record identified on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF.

   s/ Elizabeth Beck
Elizabeth Beck, Esq.
Fla Bar ID # 20697
elizabeth@beckandlee.com

Beck & Lee
  Business Trial Lawyers
28 W. Flagler Street
Suite 555
Miami, Florida 33130
(305) 789-0072 (Office)
(786) 664-3334 (Fax)
Attorneys for Plaintiff

## SERVICE LIST

### Case No. 08-80344-CIV-RYSKAMP/VITUNAC

Brian P. Miller, Esq.
Fla Bar ID # 980633
brian.miller@akerman.com
Jeffrey T. Cook, Esq.
Fla Bar ID # 647578
jeffrey.cook@akerman.com
Michael O. Mena, Esq.
Fla Bar ID # 10664
michael.mena@akerman.com
AKERMAN SENTERFITT
One Southeast Third Avenue
28th Floor
Miami, Florida 33131-1714
(305) 374-5600 (Office)
(305) 374-5095 (Fax)
Attorneys for Defendants